IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 22-cv-3217-WJM-SKC

DAVID A. WISMER III,

    Plaintiff,

v.

MOSES "ANDRE" STANCIL, in his official capacity, as the Executive Director of the Colorado Department of Corrections,
MARK FAIRBAIRN, in his official capacity as Warden of the Arkansas Valley Correctional Facility,
KENNETH PARKER, in his official capacity as Plaintiff's case manager at Arkansas Valley Correctional Facility, and
ALISON TALLEY, in her official capacity as the Administrator of the Sex Offender Treatment and Monitoring Program,

    Defendants.

---

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS

---

Before the Court is Defendants Moses "Andre" Stancil, Mark Fairbairn, Kenneth Parker, and Alison Talley (collectively, "Defendants") Motion to Dismiss Plaintiff David A. Wismer III's Amended Complaint ("AC") (ECF No. 15) Pursuant to Fed. R. Civ. P. 12(b)(6) ("Motion").  (ECF No. 17.)  Plaintiff filed a response (ECF No. 21), and Defendants filed a reply (ECF No. 24).  For the following reasons, the Motion is granted.

### I. BACKGROUND

**A.**    **Factual Allegations in AC[1]**

Plaintiff entered a guilty plea to a class four felony sex offense pursuant to the

---

[1] The Background is drawn from the AC.  (ECF No. 17.)  The Court assumes the allegations contained in the AC to be true for the purpose of deciding the Motion.  *See Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).  Citations to (¶ __),

Colorado Sex Offender Lifetime Supervision Act of 1998 (the "1998 Act" or "SOLSA"). (¶ 1.)  Following his guilty plea, Plaintiff was sentenced to probation for an indeterminate period of ten years to life.  (¶ 2.)  The sentence requires Plaintiff to participate in sex offender intensive supervised probation.  (¶ 2.)  From October 10, 2018, until December 12, 2019, Plaintiff participated in sex offense specific treatment with a provider approved by the Sex Offender Management Board.  (¶¶ 4–5.)

In December 2019, Plaintiff's probation officer filed a probation revocation complaint.  (¶ 6.)  Plaintiff admitted that he violated the conditions of his probation sentence, and the court resentenced him to an indeterminate prison sentence in the Colorado Department of Corrections ("CDOC") of four years to the remainder of his life.  That sentence was subsequently reduced to three years to life after a motion to reconsider.  (¶ 13.)  He is currently housed at the Arkansas Valley Correctional Facility ("AVCF"), a facility within the CDOC.  (¶ 12.)

The 1998 Act provides that individuals such as Plaintiff "shall be required as part of the [indeterminate] sentence to undergo treatment" and will not be released on parole unless they have "successfully progressed in treatment."  C.R.S. §§ 18-1.3-1004(3), -1006(1)(a).  The CDOC provides the required treatment through the Sex Offender Treatment and Monitoring Program ("SOTMP"), which has been approved by the Sex Offender Management Board.  (¶ 18.)  An inmate is eligible to receive treatment four years before his Parole Eligibility Date ("PED").  (¶ 40.)

Plaintiff has been eligible for treatment since he was first incarcerated in the CDOC on May 18, 2020.  (¶¶ 15–16.)  As part of the treatment readiness and referral

without more, are references to the AC.

2

process, Plaintiff was placed on the Global Referral List ("GRL") in August of 2020. (¶ 17.) He alleges that he remains on the GRL without an explanation as to how or when he will move up the list, what his position is on the list, or any estimate as to when he may receive treatment. (¶¶ 18–19.) He also alleges that he has learned his place on the Global Referral List was 140 shortly after he was incarcerated, and that as of November 2022 he was number 157 on the Global Referral List because of prioritization of inmates with shorter sentences than his. (¶¶ 67–69.)

Plaintiff has completed all steps to request and receive treatment. He asked his case manager, Defendant Parker, about his status on the list and when treatment will be available, only to be told, "there is no way of knowing how soon you will get into treatment." (¶ 54.) Plaintiff filed the necessary grievances as required by the CDOC grievance policy, Administrative Regulation ("AR") 850-04. (¶¶ 63–66.) Through the grievance process, Defendant Talley informed Plaintiff that he has "done all you need to do to be placed on the Global Referral List," and he must simply wait "[his] turn for treatment to come up." (¶ 66.)

Plaintiff alleges that the CDOC purports to follow AR 700-19 in prioritizing individuals for treatment under the GRL. (¶ 40.) Plaintiff alleges that AR 700-19, which is promulgated by the CDOC and implemented and managed by Defendants, purports to set out the manner in which individuals sentenced under the 1998 Act are prioritized for treatment under the GRL:

> 1. Offenders with judicial determinations of a sex crime that are within 4 years of their parole eligibility date are prioritized for sex offense specific treatment based upon, but not limited to, the following:
>
> a. Parole eligibility date

3

        b. Risk for sexual recidivism
        c. Prior SOTMP treatment opportunities
        d. Institutional behavior

(¶ 40.)

However, Plaintiff alleges that the CDOC does not administer the GRL in compliance with AR 700-19, or consistent with the requirement of the 1998 Act, as the CDOC does not have a meaningful process or procedure to prioritize treatment for inmates. (¶ 42.) Plaintiff alleges that the GRL is simply a list of names with an assigned priority order, yet that priority order has no effect and changes in an arbitrary and capricious manner. (¶ 42.) Plaintiff alleges that in addition to the low number of inmates who are arbitrarily selected for treatment, the CDOC offers treatment at a limited number of facilities and refuses to transfer inmates for treatment. (¶ 42.)

In April 2022, Plaintiff alleges that he became parole eligible, but the parole board denied his parole application on the sole basis that he was not enrolled in the CDOC's treatment program. (¶¶ 20–21, 61.) Plaintiff alleges that the CDOC knows that its refusal to provide treatment means that he cannot be considered for parole, as Defendant Parker explicitly told him so after Plaintiff inquired about his parole hearing. (¶ 58.) As of the filing of the AC on March 9, 2023, Plaintiff's next parole hearing was set for April 2023.[2] (¶ 70.)

**B.**  **Procedural History**

Plaintiff filed his Complaint on December 14, 2022 (ECF No. 1) and his AC on March 9, 2023 (ECF No. 15). He brings claims pursuant to 42 U.S.C. § 1983 for

---

[2] No party has filed anything with the Court explaining the outcome of Plaintiff's April 2023 parole hearing. Thus, the Court rules on the Motion under the assumption that the facts as of the time of the filing of the briefing on the Motion remain the *status quo*.

injunctive and declaratory relief against all Defendants in their official capacities for: (1) a violation of his procedural due process rights under the Fourteenth Amendment, and (2) a violation of his substantive due process rights.  (ECF No. 15.)

On March 16, 2023, Defendants filed their Motion, asking the Court to dismiss both claims.  (ECF No. 17.)  At the time of the filing of his response to the Motion on April 6, 2023, Plaintiff stated that the CDOC had still not enrolled Plaintiff in SOTMP, had not provided him with an estimate for when he will be able to access SOTMP, and had not moved him to a CDOC facility that offers SOTMP.  (ECF No. 21 at 3.)

## II. LEGAL STANDARD

Under Rule 12(b)(6), a party may move to dismiss a claim in a complaint for "failure to state a claim upon which relief can be granted."  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."  *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (internal quotation marks omitted).

The Rule 12(b)(6) standard requires the Court to "assume the truth of the plaintiff's well-pleaded factual allegations and view them in the light most favorable to the plaintiff."  *Ridge at Red Hawk*, 493 F.3d at 1177.  Thus, in ruling on a Motion to Dismiss under Rule 12(b)(6), the dispositive inquiry is "whether the complaint contains 'enough facts to state a claim to relief that is plausible on its face.'"  *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Granting a motion to dismiss "is a harsh remedy which must be cautiously

5

studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Dias v. City & Cnty. of Denver*, 567 F.3d 1169, 1178 (10th Cir. 2009) (internal quotation marks omitted). "Thus, 'a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely.'" *Id.* (quoting *Twombly*, 550 U.S. at 556). However, "[t]he burden is on the plaintiff to frame a 'complaint with enough factual matter (taken as true) to suggest' that he or she is entitled to relief." *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556). "[C]omplaints that are no more than 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action,' . . . 'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

### III. ANALYSIS[3]

#### A.   Procedural Due Process

The Supreme Court has held that "[a]n essential principle of due process is that a deprivation of life, liberty, or property 'be preceded by notice and an opportunity for hearing appropriate to the nature of the case.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1984). A plaintiff alleging a claim under procedural due process must show: (1) "that he possessed a constitutionally protected liberty or property interest such that due process protections were applicable," and (2) "that he was not afforded an appropriate level of process." *Zwygart v. Bd. of Cnty. Comm'rs*, 483 F.3d

---

[3] The Court had some difficulty following the parties' citations to the briefs and the cases in the briefing and found citations to page numbers were often inaccurate. In future briefing, the parties are directed to carefully follow *The Bluebook* system of citations for cases and cite the docket entry number and page numbers for citations for briefs. For instance, "Resp. at 9" or "*McDaniel* at 5" will not suffice.

6

1086, 1093 (10th Cir. 2007) (internal quotation marks omitted).

In the prison context, a liberty interest only arises when an aspect of the confinement amounts to an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In determining whether a liberty interest created by state law warrants due process protection, this Court must assess the nature of the interest and whether its deprivation will cause the inmate to suffer "a 'grievous loss' of liberty retained even after . . . imprisonment." *Id.* at 480–81. The Supreme Court has recognized that a "major change" in a prisoner's condition of confinement may amount to a "grievous loss" to the prisoner. *See Wolff v. McDonnell*, 418 U.S. 539, 572 n.19 (1974).

Here, Plaintiff alleges that he is on the GRL awaiting treatment and that he has taken all steps necessary to enter treatment. (¶¶ 16–19.) Additionally, he alleges that "CDOC offers SOTMP treatment at a limited number of facilities, refuses to transfer inmates for the purpose of SOTMP treatment prior to their parole eligibility date, and selects the small number of people allowed to participate in SOTMP treatment based on a deeply flawed, arbitrary, andantiquated [*sic*] system that flouts both the spirit and the letter of the 1998 Act." (¶ 24.)

Plaintiff states that the "liberty interest [he] claims is the opportunity to receive treatment so that he can be **considered for parole**, not that he is **entitled** to release after the parole hearing." (ECF No. 21 at 11 (emphasis in original).) He further argues that "[i]nmates get to plead their case for release on parole as soon as they reach their parole eligibility date, but inmates like Mr. Wismer are shut out of this process if they are not in treatment." (*Id.*) Accordingly, he contends that "[i]t is the preclusion from a parole

7

hearing, due to the acts of CDOC, that violates a liberty interest." (*Id.*)

In their Motion, Defendants argue that Plaintiff's contention that "he has a liberty interest in accessing SOMB treatment now, so that he may become eligible for parole right away, and that Defendants have violated his rights by allegedly depriving him of the opportunity to participate in SOMB treatment without notice, opportunity to contest the alleged deprivation, or meaningful review of reasons for the alleged deprivation" fails for three reasons. (ECF No. 17 at 4.) First, Defendants argue that inmates have no liberty interest in being paroled prior to serving their full sentences. (*Id.*) Next, they argue that inmates generally have no liberty interest in receiving rehabilitative treatment, including sex offender treatment, where such treatment is a prerequisite to discretionary parole. (*Id.*) Finally, they assert that the Tenth Circuit and other courts have held that a Colorado sex offender has no right to unconditional access to placement in sex offender treatment. (*Id.* at 4–5.)

The Court has carefully considered the parties' arguments and the relevant case law, which will be discussed in greater depth below. Given Plaintiff's stated liberty interest, combined with the allegations in the AC, for the following reasons, the Court concludes that Plaintiff has failed to allege a procedural due process claim.

Critical to the Court's determination, Defendants point out what Plaintiff has *not* alleged concerning whether AVCF offers SOTMP treatment and whether CDOC has refused to transfer him to a facility that certainly offers such treatment. According to Defendants, Plaintiff has "not plausibly alleged that he has been deprived of SOTMP treatment outright; by his own account he is on the priority list for that treatment and will receive it when it is his turn under the rules listed at AR 700-19." (ECF No. 24 at 7

8

(citing ¶¶ 18, 40).)  Further, Defendants emphasize that Plaintiff's AC "includes no allegations analogous to the ones in *Tillery* [*v. Raemisch*, 2017 WL 217816 (D. Colo. Jan. 18, 2017)] regarding the plaintiff's facility assignment to support his assertion that he has been permanently denied access to SOTMP treatment."  (*Id.* at 10.)

Moreover, while Plaintiff alleges that Defendants have not transferred him to a facility that offers treatment, he does not clearly allege that he cannot receive treatment at the facility where he presently assigned.  (*Id.* (citing ECF No. 21 at 9–10 to demonstrate that Plaintiff's argument "clouds the question of whether he is arguing that he cannot receive treatment at" AVCF).)  Instead, Plaintiff alleges in a conclusory manner that CDOC refuses to transfer "inmates" for the purpose of receiving SOTMP treatment.  (¶ 24.)  The Court views this allegation as vague and insufficiently specific in this context; to wit, he does not allege that AVCF does not offer SOTMP treatment at all, nor does he allege that he asked to be transferred to a facility that offers SOTMP treatment and was refused.

Unlike other plaintiffs in the District of Colorado who have brought similar claims, Defendants articulately encapsulate Plaintiff's pleading deficiency, stating that "[d]espite its insistence otherwise, [Plaintiff's] Response reveals that the true gravamen of [his] complaint is timing."  (ECF No. 24 at 7.)  The Court agrees with this characterization of Plaintiff's allegations and finds the cases upon which Plaintiff relies distinguishable.

In *Beebe v. Heil*, 333 F. Supp. 2d 1011, 1012–13 (D. Colo. 2004), the plaintiff started SOTMP while he was incarcerated, but he was dismissed from treatment without notice, explanation, or an opportunity to be heard.  The *Beebe* court held that an inmate sentenced under SOLSA who had *already begun* SOTMP treatment had a

9

protected liberty interest in that treatment such that he was entitled to a hearing prior to being terminated from the program.  *See id.* at 1016–17.  Importantly, the *Beebe* court acknowledged that "it is true that Plaintiff has no liberty interest in parole under Colorado's indeterminate sentencing scheme since the scheme vests full discretion to grant parole in the parole board."  *Id.* at 1013.  Rather, the liberty interest in *Beebe* was rooted in the "manner in which [the plaintiff] was terminated from the program."  *Id.* at 1014; *see also Doe v. Heil*, 533 F. App'x 831, 842 (10th Cir. 2013) (adopting the district court's conclusion that *Beebe* only supports a "liberty interest in being afforded due process before being dismissed from treatment") (quoting *Beebe*, 333 F. Supp. 2d at 1014)); *Conkleton v. Zavaras*, 2011 WL 839282, at *4 (D. Colo. Mar. 7, 2011) ("Unlike the situation in *Beebe* where Mr. Beebe's treatment in the SOTMP program was terminated without due process and he was denied reentry into the program, Plaintiff in this case has not been terminated from treatment without notice or opportunity to be heard.  Instead, he has to wait for reentry into the program to a date determinable in the future when his close custody rating has lowered[.]").

Here, Plaintiff has not been terminated from the SOTMP program.  Rather, he acknowledges that he is on the GRL and must wait to receive treatment.  (¶ 18.)  The Court finds that find that this delay does not amount to "a grievous loss to the inmate." *Beebe*, 333 F. Supp. 2d at 1017 (quoting *Vitek v. Jones*, 445 U.S. 480, 492 (1980)).

The Court also finds its opinion in *Tillery* distinguishable.  In *Tillery*, the plaintiff alleged that he was incarcerated in a CDOC facility that does not offer SOTMP treatment and that CDOC refused his request for a transfer for purposes of obtaining treatment, which meant that the plaintiff could never receive the sex offender treatment

10

required for him to become parole eligible. *Tillery*, 2017 WL 217816, at *2. The undersigned concluded that because Tillery had asserted a "complete denial of access to the SOTMP, not a mere delay, that in effect there is no wait-list, and as a result [Tillery] will never receive treatment and will therefore never become eligible for parole." *Id.* at *6 (quotation marks altered). Accordingly, the undersigned found that Tillery had alleged a deprivation of treatment that amounted to a "grievous loss," thereby implicating a protected liberty interest that was sufficient to state a procedural due process claim. *Id.*; *see also Lerner v. Stancil*, 2023 WL 3595998, at *2 (D. Colo. May 23, 2023) (finding plaintiffs stated procedural due process claim where Plaintiff Lerner alleged that his facilities did not provide access to SOTMP and Plaintiff Aigner alleged that he was not aware that SOTMP would not be offered at the Crowley Correctional Facility, that he had "no opportunity to be heard or seek review of his assignment" to that facility, and at some point he was transferred to the Fremont Correctional Facility, but had not been provided the opportunity to access or participate in the SOTMP sex offender treatment, which he alleged he needs to become eligible for release on parole).[4]

---

[4] Although United States District Judge Nina Y. Wang did not strictly follow the reasoning in *Beebe* and *Tillery*, the Court is generally in agreement with her thorough statutory and public policy analysis in *Lerner*, particularly with respect to her observations about the overarching intent of the Colorado legislature and the SOLSA in regards to these issues. *See Lerner*, 2023 WL 3595998, at *5–10 ("This Court deviates slightly from *Beebe* and *Tillery*, which reached similar conclusions, in its reasoning. While those courts rooted the liberty interest in treatment's effect on parole and parole eligibility, this Court roots the liberty interest in the loss of treatment that is contemplated as SOLSA's "centerpiece." . . . Without treatment, the conditions of SOLSA confinement are fundamentally and irretrievably altered: the inmate loses a segment of the sentence which the General Assembly deemed necessary and appropriate to punishment, rehabilitation, and reentry into society at large.").

Even were this Court to adopt the analysis set forth in *Lerner,* however, because the facts alleged in this case are distinguishable from those in *Lerner*, the facts here continue to be insufficient to state a procedural due process claim. Judge Wang found that "custody without

Here, Plaintiff suggests, but does not clearly allege, that AVCF does not offer SOTMP treatment. (¶¶ 22, 24, 39, 55, 71, 73.) He never alleges that SOTMP treatment is not available at AVCF. Moreover, Plaintiff does not allege that he has requested a transfer to a CDOC facility that offers SOTMP treatment or that CDOC has denied any such request. The disparities in the factual allegations here and those alleged in *Tillery* are consequential. While Tillery alleged facts supporting the conclusion that his status changed from eligible to ineligible for parole, Plaintiff has not here alleged legally comparable facts.

What Plaintiff *has* alleged, despite his argument that the Court should find otherwise, is a liberty interest that is nearly identical to the one alleged in *McDaniel v. Dauffenbach*, 2023 WL 4908370 (D. Colo. Feb. 3, 2023). Plaintiff argues that he has a "liberty interest in the treatment necessary to be considered for parole." (ECF No. 21 at 13.) The plaintiff in *McDaniel* "contend[ed] that he ha[d] a liberty interest in being 'considered for parole.'" *Id.* at *2. The *McDaniel* court distinguished SOLSA's permissive grant of discretion to the parole board with *Greenholtz v. Inmates of Neb. Penal and Corr. Complex*, 442 U.S. 1 (1979), where the Supreme Court considered a Nebraska statute that mandated a prisoner's release once certain conditions were met, and *Board of Pardons v. Allen*, 482 U.S. 369 (1987), where the Supreme Court considered a Montana statute that required release once certain factual findings were made. The *McDaniel* court concluded that

> Colorado's system does not create a liberty interest in being considered for parole that triggers due process rights. It

---

treatment is a deprivation of that interest," *id.* at *10, but the Court concludes that here, Plaintiff has not sufficiently alleged that he is "without treatment," but only that he is on the GRL and does not know when he will receive treatment.

12

> requires sex offender treatment and being deprived of that treatment certainly is a detriment to Mr. McDaniel's rehabilitation and his efforts to be paroled. But the statute does not mandate release in the way addressed in *Greenholtz* and *Allen*, whether or not a prisoner has treatment. Mr. McDaniel therefore does not have a constitutionally protected liberty interest in either being given treatment or in the expectation of parole.

*McDaniel*, 2023 WL 4908370, at *4; *cf. Ong Vue v. Henke*, 746 F. App'x 780, 782 (10th Cir. 2018) (finding that because Vue does not have a liberty interest in receiving meaningful consideration for parole under Oklahoma law, he failed to state a due process claim).

Given the foregoing, the Court finds that Plaintiff has not alleged facts which would give rise to a procedural due process claim.

**B.   Substantive Due Process**

A substantive due process claim is "founded upon deeply rooted notions of fundamental personal interests derived from the Constitution." *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998). The concept of substantive due process is not fixed or final, *Rochin v. California*, 342 U.S. 165, 170 (1952), but generally is accorded to matters relating to marriage, family, procreation, and the right to bodily integrity, *see Albright v. Oliver*, 510 U.S. 266, 272 (1994).

The standard for judging a substantive due process claim is whether the challenged governmental action would "shock the conscience of federal judges." *Tonkovich v. Kansas Bd. of Regents*, 159 F.3d 504, 528 (10th Cir. 1998). To satisfy this standard, "a plaintiff must do more than show that the government actor intentionally or recklessly caused injury to the plaintiff by abusing or misusing governmental power." *Id*. Instead, a plaintiff "must demonstrate a degree of outrageousness and a magnitude of

13

potential or actual harm that is truly conscience shocking." *Id*. "A substantive due process violation must be something more than an ordinary tort to be actionable under § 1983." *Abeyta By and Through Martinez v. Chama Valley Indep. Sch. District, No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996).

The Court finds that Plaintiff's allegations do not state a substantive due process claim. Plaintiff alleges, among other things, that

> 41. CDOC, by and through the Defendants, has knowingly and willfully managed and operated the Global Referral List in a manner contrary to the letter and spirit of the 1998 Act and AR 700-19.
>
> 42. The Global Referral List does not afford any meaningful process or procedure by which individuals who are required to participate in SOTMP treatment are prioritized for treatment. The GRL is also not administered in compliance with AR 700-19.
>
> 43. The GRL is operated in an arbitrary and capricious manner as it is a list of names with an assigned priority order, yet that priority number has no effect and is subject to change in an arbitrary and capricious manner.
>
> 44. CDOC seemingly acknowledges the meaningless nature of this list as they refuse to give out to inmates or their counsel the inmates position on the GRL as it is not reflective of when an individual will be enrolled in SOTMP treatment.
>
> 45. CDOC, by and through the Defendants, prioritizes individuals for treatment based on criteria unrelated to any legitimate penological interests and beyond the requirements of AR 700-19, including, without limitation, the convenience of CDOC staff and cost savings for CDOC. In doing so, the CDOC actively harms prisoners, such as Mr. Wismer, who must receive treatment in order to be parole eligible.

(¶¶ 41–45.) He argues in his response that there is no "consistent methodology to the prioritization of those on the GRL," "Defendants have provided no explanation for how

Mr. Wismer is prioritized on this list, or why he has continued to move down (not up) the list," and it is "impossible to know when he will receive treatment, therefore, he cannot be considered for parole and will likely spend the remainder of his life in prison." (ECF No. 21 at 16–17.)

However, the Court agrees with Defendants that at bottom, Plaintiff's allegations are conclusory. Although Plaintiff contends that the GRL does not afford any meaningful process or procedure by which individuals are prioritized for treatment, he also acknowledges that the GRL is, as Defendants put it, "at least nominally governed by AR 700-19." (ECF No. 24 at 11.) The Court agrees that although Plaintiff alleges that the GRL is not administered "in compliance" with AR 700-19, he provides no *factual* support for this assertion. (¶ 42.) Instead, his own allegations show at least some reasoning behind the prioritization of inmates on the GRL:

> 67. In the first three months that Mr. Wismer was incarcerated following imposition of his initial four years to life sentence, he was informed by CDOC staff that he was number 140 on the GRL for SOTMP.
>
> 68. Almost two years later, and one month prior to his Parole Board release hearing in April of 2022, CDOC staff informed Mr. Wismer that he is now number 142 on the GRL due to other individuals with shorter sentences being prioritized ahead of him.
>
> 69. Per a copy of the GRL obtained on November 17, 2022, Mr. Wismer is now number 157 on the GRL.

(¶¶ 67–69.) As Defendants state in their reply, Plaintiff's allegations "indicate that the priority number on the GRL does reflect the order in which sex offenders will receive treatment, even if it does not predict precisely when they will receive that treatment." (ECF No. 24 at 12.)

15

While the Court acknowledges that it must be endlessly frustrating for Plaintiff not to have a date certain on which he will receive treatment, he has not alleged facts showing an arbitrary or capricious scheme that rises to the level of a substantive due process violation.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. The Motion (ECF No. 17) is GRANTED;

2. The Amended Complaint (ECF No. 15) is DISMISSED WITHOUT PREJUDICE;

3. Should he elect to do so, Plaintiff is granted leave to file a second amended complaint that cures the pleading deficiencies identified in this Order by **December 8, 2023**; and

4. Defendants shall file an answer or other responsive pleading to Plaintiff's second amended complaint by **December 29, 2023**.

Dated this 3rd day of November, 2023.

BY THE COURT:

_____
William J. Martínez
Senior United States District Judge